**[J-35-2021] [MO:Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| UNITED BLOWER, INC. | : | No. 3 MAP 2021 |
| | : | |
| | : | Appeal from the Order of |
| v. | : | Commonwealth Court at No. 1383 |
| | : | CD 2019 dated July 13, 2020 |
| | : | Affirming the Order of the Lycoming |
| LYCOMING COUNTY WATER AND | : | County Court of Common Pleas, |
| SEWER AUTHORITY | : | Civil Division, dated August 20, 2019 |
| | : | at Nos. CV-15-00619 & CV-15- |
| G.M. MCCROSSIN, INC. | : | 00623. |
| | : | |
| | : | ARGUED: May 18, 2021 |
| v. | : | |
| | : | |
| | : | |
| LYCOMING COUNTY WATER AND | : | |
| SEWER AUTHORITY | : | |
| | : | |
| | : | |
| APPEAL OF: LYCOMING COUNTY | : | |
| WATER AND SEWER AUTHORITY | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DOUGHERTY**                      **DECIDED: September 22, 2021**

It appears appellee United Blower was the initial purchaser of all the steel —
foreign and domestic — used in the public works project at issue. As a result, I agree
with the majority that, on remand, the fraction used to determine the cost of the foreign
steel should represent the cost to United Blower of the foreign steel used divided by the
cost to United Blower of all the steel used. However, I cannot agree with the majority's
determination the lower courts erred in permitting a 10% reduction, representing a

domestic overhead component, from the "cost" United Blower incurred for the foreign steel used. Accordingly, I respectfully dissent.

I briefly recount the relevant facts. Appellant Lycoming Water & Sewer Authority hired appellee McCrossin as the general contractor to install a new blower system. The blower system is made entirely of steel. McCrossin sub-contracted the building of the system, including internal blower assemblies, to appellee United Blower. United Blower bought the steel parts necessary for the blower assemblies from three different United States suppliers. United Blower paid a total of $67,340 for those parts, which were all manufactured in China. In proceedings convened to determine what portion of the cost of the blower system was manufactured in the United States for purposes of compliance with the Steel Act,[1] United Blower presented correspondence from the United States suppliers stating they marked up the foreign steel by 10% to cover their own domestic overhead costs such as shipping, transportation, warehousing, etc., and United Blower sought a reduction in the "cost" of foreign steel based on this markup. The hearing officer did not allow the 10% reduction because the supplier invoices did not itemize any specific overhead costs. On appeal, the court of common pleas reversed the hearing officer and reduced the cost of the foreign steel by 10%, and the Commonwealth Court affirmed. When the 10% reduction is allowed, United Blower's "cost" for foreign steel is less than 25% of the cost of the completed project, no matter which final price of the project is considered in the computation.[2]

---

[1] The Steel Products Procurement Act (Steel Act), 73 P.S. §§1881-1889, requires public works projects to use only United States steel products and the provision at issue states: "If a product contains both foreign and United States steel, such product shall be determined to be a United States steel product only if at least 75% of the **cost** of the articles, materials and supplies have been mined, produced or manufactured, as the case may be, in the United States . . . ." 73 P.S. §1886 (emphasis added).

[2] McCrossin paid United Blower $239,800 for completing the project, and Lycoming Sewer Authority paid McCrossin $243,505 for completing the project.

The majority concludes that even though the Steel Act does not define the term "cost," which is a word with a "common and approved usage," the term is not ambiguous but simply encompasses "all aspects" of the final "price paid" to acquire steel products, including "intermediary mark-ups." Majority Op. at 12 (emphasis omitted). In my view, although "cost" and "price" are related terms, they are not necessarily so simply defined or indivisibly intertwined. Indeed, when an item or service is acquired at "cost," it is generally understood to be acquired at a lower "price" representing no mark-ups above the price of production. *See, e.g.*, *Lewis & McDowell, Inc. v. Yehr*, 55 A.2d 397, 398-99 (Pa. 1947) (mechanics lien proceeding involved "costs-plus" contract meaning "costs" of materials furnished "plus" overhead and profit). I believe "price," on the other hand, although related to cost, reflects assessments based on supply and demand in a free market, and is intended to represent what a purchaser is willing to pay and a seller is willing to accept in payment for a product or service. *See, e.g.*, Joshua P. Davis, Shannon Wheatman, Cristen Stephansky, *Writing Better Jury Instructions: Antitrust as an Example*, 119 W. VA. L. REV. 235, 288 (2016) ("Prices in a free market (where businesses compete for customers) are considered to be at competitive levels.") (emphasis omitted). Although the Steel Act arguably exerts some governmental control over the free market system as it relates to steel products, we should not lose sight of the nuanced way in which costs and prices vary and interact in that system. Simply put, I would conclude domestic overhead is an element of the "cost" of foreign steel that can properly be tabulated and deducted from the price paid and received therefor because it adds only domestic value realized by United States steel suppliers of foreign steel products, not by foreign steel producers.

It also appears to me the primary reason why the hearing officer denied the 10% reduction for value added domestically (*i.e.*, overhead costs) was because the invoices

for the foreign steel did not include that breakdown; the implication is that, had the invoices from the United States suppliers to United Blower broken out the suppliers' charges for transportation, warehousing, and the like, the reductions would have been permitted at the first level of review because they were properly set forth on the record. In my view, this case should not turn on such a circumstance. Whether or not the "cost" ratio under the Steel Act is satisfied depends on the actual cost of foreign steel used divided by the actual cost of all steel (domestic and foreign) used, not whether a particular bookkeeping and/or billing practice was employed. I consider the documentation from the United States suppliers of foreign steel indicating 10% of the prices they charged for those products covered domestic overhead costs as establishing the fact as surely as if it had been invoiced on a receipt.

Lastly, although the Steel Act is remedial in nature and should be liberally construed, and there is no *de minimis* principle applicable to the cost ratio created thereunder, the fact remains that less than a $7,000 difference in the cost of foreign steel used in a project that cost some $240,000 to complete is controlling as to whether the project was in compliance with the Steel Act. The appellees presented evidence that the lower tribunals properly ruled was sufficient to substantiate the relatively small difference which brought the cost of foreign steel used within the ratio set forth by the Steel Act. I would therefore affirm.